512 F.2d 486
 Albra Christine WHITE, Individually, etc., et al., Plaintiffs,
v.
TEXAS EASTERN TRANSMISSION CORPORATION et al., Defendants.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY and the Bettis
Corporation, Defendants-Third-Party
Plaintiffs-Appellants, Texas Eastern
Transmission Corporation
and
The Fidelity and Casualty Company of New York,
Defendants-Third-Party Plaintiffs,
v.
CHARLES WHEATLEY COMPANY, Third-Party Defendant-Appellee,
Vinson Supply Company, Third-Party Defendant, Home
Insurance Company, Intervenor.
 No. 74-1667.
 United States Court of Appeals,
Fifth Circuit.
 May 5, 1975.
Rehearing and Rehearing En Banc Denied June 24, 1975.
 
 Timothy J. McNamara, Lafayette, La., for third-party defendant-appellee.
 Nicholls Pugh, Jr., Lafayette, La., for defendants-third-party plaintiffs-appellants.
 Bob F. Wright, Lafayette, La., for Albra Christine White, and others.
 Fred H. Sievert, Jr., Lake Charles, La., for Tex. Eastern Transmiss. Corp. & Fidelity & Cas. Co.
 James R. Nieset, Lake Charles, La., for Vinson Supply Co.
 Appeal from the United States District Court for the Western District of Louisiana.
 Before WISDOM and SIMPSON, Circuit Judges, and NICHOLS*, Associate Judge.
 SIMPSON, Circuit Judge:
 
 
 1
 Murray Granvil White, an employee of the Charles Wheatley Co. (Wheatley), was fatally injured when component parts of a Wheatley Univalve Launch Package[1] upon which he was working exploded. The launch package had been sold by Wheatley to Texas Eastern Transmission Corporation (Texas Eastern) and was installed on a fixed offshore drilling platform located in Block 280 of the Gulf of Mexico offshore of Cameron, Louisiana. White's widow and daughter were entitled to and received compensation from Wheatley's insurance carrier in accordance with the provisions of the Longshoremen's and Harbor Workers' Compensation Act, Title 33, U.S.C. § 901 et seq. (hereinafter "L & H").[2]
 
 
 2
 Also instituted by White's survivors was the present litigation, a civil tort action for damages against Texas Eastern and against the Bettis Corporation, manufacturer of the actuator valve incorporated in the Wheatley launch system.[3]
 
 
 3
 Bettis Corporation and its insurer, St. Paul Fire and Marine Insurance Company (hereafter collectively referred to as "Bettis") filed third party complaints against Wheatley.[4] Bettis' primary position is that it is entitled, in the event of a judgment holding it liable for damages to White's survivors, to contribution or to indemnity in tort for all or part of such damages.[5]
 
 
 4
 Wheatley moved to dismiss Bettis' third-party complaint on grounds that the exclusivity provision of L & H, Title 33, U.S.C. § 905, as construed by this court, precludes such indemnity claims against an employer. The district court entered a Rule 54(b) F.R.Civ.P. order granting Wheatley's motion to dismiss, and this appeal followed. For the reasons advanced below, we affirm the order of the district court.
 
 
 5
 Our discussion necessarily begins, and to all effective intents and purposes ends, with Ocean Drilling and Exploration Co. (ODECO) v. Berry Bros. Oilfield Service, Inc., 5 Cir. 1967, 377 F.2d 511, cert. denied 1967, 389 U.S. 849, 88 S.Ct. 102, 19 L.Ed.2d 118 (ODECO). In that case, employees of Berry Bros. were injured while performing repair work on an offshore drilling platform owned by ODECO. The injured employees received L & H compensation from their employer, and also filed suits in tort against ODECO alleging ODECO's negligence in failing to furnish a safe place to work. ODECO in turn filed a third-party complaint for indemnity in tort and contract against Berry Bros. The district court granted Berry Bros.' motion to dismiss the third-party complaint, and we affirmed on appeal.
 
 
 6
 After disposing of ODECO's claimed contractual right to indemnity (see note 5, supra), we turned to a consideration of the very issue which is again before us today: "whether a claim for indemnity remains available to ODECO (by analogy, here to Bettis) under maritime tort principles." 377 F.2d at 513. We held, after citing the exclusive liability provision of L & H, 33 U.S.C. § 905,[6] as follows:It is thus apparent that the Act's exclusive liability provision effectively abrogates any independent tort liability of the employer to its employees, thereby eliminating any basis which may have existed for indemnification on a tort theory. Thus, while the employer may continue, even in spite of the exclusive liability provision of the Act, to remain liable for indemnity on the basis of an express or implied contractual obligation, in the absence of such obligation, as here, there simply exists no underlying tort liability upon which to base a claim for indemnity against the employer. See United Air Lines, Inc. v. Wiener, 9th Cir. 1964, 335 F.2d 379, 402-404, cert. dismissed, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549; Halliburton Co. v. Norton Drilling Co., supra, 302 F.2d (431) at 434; Brown v. American-Hawaiian S. S. Co., 3d Cir. 1954, 211 F.2d 16, 18; American Mut. Liab. Ins. Co. v. Matthews, 2nd Cir. 1951, 182 F.2d 322, 323-336.
 
 377 F.2d at 514-15. (Emphasis added)
 
 7
 Without more, this would seem to end the matter. For, it is clear from a reading of ODECO and other cases[7] that there must be some underlying tort liability predicated on a breach of the employer's duty in order for a right of indemnity to arise in a third party. Here, the only breach of duty-and the only resulting theoretical liability-of Wheatley that could be asserted was a duty owed to its employee to assemble the launch package in a non-negligent manner so as to prevent injury to the employee. It is clear beyond doubt under ODECO that § 905 of L & H has extinguished this liability in favor of a compensation scheme. Thus, there remains no underlying tort liability to support Bettis' indemnity claim.
 
 
 8
 Appellants present an argument by analogy with cases decided under the exclusive liability provision of the Federal Employees' Compensation Act (FECA), Title 5, U.S.C. § 8116(c), because of the similarity of the language of FECA to that of L & H. We reject application of these decisions as inapposite to our decision of this appeal for reasons we will briefly set forth.
 
 
 9
 In the first place, conceding the persuasiveness of such cases in the absence of an authoritative construction of § 905 of L & H, such a situation is simply not present. Secondly, the Supreme Court decisions which have permitted some forms of indemnity under § 8116(c) of FECA may be distinguished on their facts from the instant controversy.[8] Finally, the lower federal courts are themselves divided as to the proper interpretation of § 8116(c) of FECA as applied to tort indemnity claims.[9]
 
 
 10
 Likewise without merit is appellant's further contention that the precedential vitality of ODECO's clear holding has been eroded by subsequent decisions in this circuit.[10] Very recently, in Aetna Casualty & Surety Co. v. Service Contracting, Inc., 5 Cir. 1973, 490 F.2d 299, we adhered to the rule of ODECO in unmistakable language:
 
 
 11
 (H)aving paid workmen's compensation to Laster in accordance with the exclusive liability provision of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., Service Contracting was not subject to any independent tort liability to its employees. Without this underlying tort liability, Service Contracting could not have been liable for indemnity in the absence of a written contract. Ocean Drilling & Exploration Co. v. Berry Brothers Oil Field Service, Inc., 377 F.2d 511 (5th Cir.), cert. denied, 389 U.S. 849 (88 S.Ct. 102, 19 L.Ed.2d 118) (1967). See General Electric Co. v. Cuban American Nickel Co., 396 F.2d 89 (5th Cir. 1968); Halliburton Co. v. Norton Drilling Co., 302 F.2d 431 (5th Cir. 1962).
 
 
 12
 490 F.2d at 300-01.
 
 
 13
 Guided by such undeviating precedent from this court, the district court was clearly justified in its dismissal of Bettis' third-party claim for tort indemnity against Wheatley.
 
 
 14
 Affirmed.
 
 
 
 *
 Of the United States Court of Claims, sitting by designation
 
 
 [1]
 The Univalve Launch Package was part of an apparatus used for cleaning moisture from within natural gas transmission lines connecting offshore drilling platforms. The launcher would disgorge 24 inch balls known as "pigs" into the gas transmission lines when actuated. The actuator, (a "pig launcher" in oil field vernacular) among other uses, opens and closes oil field valvers, or actuates them. At the time he sustained his fatal injuries, Murray White was installing a device that would automatically release the balls at predetermined intervals. It is our understanding that the launch system had theretofore required manual operation of the actuator
 
 
 [2]
 The Outer Continental Shelf Lands Act, Title 43, U.S.C. § 1331 et seq., provides that the compensation law applying to injuries on these fixed, offshore drilling platforms is that specified in the L & H Act. 43 U.S.C. § 1333(c)
 
 
 [3]
 The Wheatley launch system was assembled from a number of component parts some of Wheatley's manufacture and others purchased by Wheatley from independent suppliers such as Bettis Corporation
 
 
 [4]
 A third party claim against Wheatley was also filed by Texas Eastern and, subsequently, by the Vinson Supply Company (Vinson). The third-party complaint of Texas Eastern alleged a contractual right to indemnity based on language appearing on the purchase order forms executed between Texas Eastern and Wheatley. Wheatley made no motion to dismiss Texas Eastern's complaint, and its viability is not now an issue before this court
 Vinson Supply Company, like Bettis, was a supplier of component parts for the Wheatley-assembled launch system. Vinson's third party complaint against Wheatley was filed after the entry of judgment against Bettis on its third-party complaint and before this appeal was taken. The district court has withheld disposition of the Vinson complaint pending our decision in this appeal.
 
 
 [5]
 Bettis also claimed the right to indemnity based on Wheatley's breach of an implied warranty that it would use the Bettis supplied equipment only in accordance with the specifications and recommendations supplied by Bettis. This is an apparent attempt to invoke the right of indemnification recognized in Ryan Stevedoring Co. v. Pan Atlantic S. S. Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, in a non-vessel oriented context. We clearly rejected any such attempts in Ocean Drilling and Exploration Co. v. Berry Bros. Oilfield Service, Inc., 5 Cir. 1967, 377 F.2d 511, 513 & n.3, cert. denied, 1967, 389 U.S. 849, 88 S.Ct. 102, 19 L.Ed.2d 118
 
 
 [6]
 Title 33, U.S.C. § 905, prior to the 1972 amendment, read as follows:
 § 905. Exclusiveness of liability. The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under this chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, nor that the employee assumed the risk of his employment, nor that the injury was due to the contributory negligence of the employee. (Mar. 4, 1927, ch. 509, § 5, 44 Stat. 1426.)
 The effective date of the 1972 amendments to L & H was after the institution of this action below, and the amendments do not enter into the disposition of this appeal. But, for the legislative history of the amendments see 1972 U.S.Code Cong. and Admin.News, p. 4698 et seq.
 
 
 [7]
 See, e. g. Loffland Brothers Co. v. Roberts, 5 Cir. 1967, 386 F.2d 540, cert. denied 1968, 389 U.S. 1040, 88 S.Ct. 778, 19 L.Ed.2d 830; Drewery v. Daspit Brothers Marine Divers, Inc., 5 Cir. 1963, 317 F.2d 425
 
 
 [8]
 In Weyerhaeuser S. S. Co. v. United States, 1963, 372 U.S. 597, 83 S.Ct. 926, 10 L.Ed.2d 1, the Court held that the exclusive liability provision of FECA yielded to the time-honored rule of divided damages in mutual fault admiralty collision cases. The Court indicated that it considered this result dictated by Congress' expressly providing in the Public Vessels Act, Title 46, U.S.C. § 781 et seq., that the United States be liable just as private shipowners in mutual fault collision cases
 In Treadwell Const. v. United States, 1963, 372 U.S. 772, 83 S.Ct. 1102, 10 L.Ed.2d 136, the Court simply vacated a holding of the court of appeals and remanded for further consideration by the district court the question whether § 8116(c) barred indemnity claims where the Federal Tort Claims Act, Title 28, U.S.C. § 2671 et seq., was applicable in the light of the Court's holding in Weyerhaeuser.
 These cases are not dispositive of the E & H exclusivity issure before us here.
 
 
 [9]
 See, Annot., 12 A.L.R.Fed. 616, §§ 5 and 6 (1972)(Supp.1974), for a collecting and analysis of the divergent views on the reach of FECA's exclusive liability provision
 
 
 [10]
 Appellant cites Sandoval v. Mitsui Sempaku K. K. Tokyo, 5 Cir. 1972, 460 F.2d 1163, and Loffland Bros. v. Roberts, 5 Cir. 1967, 386 F.2d 540, cert. denied 1968, 389 U.S. 1040, 88 S.Ct. 778, 19 L.Ed.2d 830, in support of his argument. Sandoval involved the FECA and need not detain us. See nn. 8-9 and accompanying text, supra. In Loffland an employee of a casing contractor was injured in the course of well drilling on an offshore platform similar to the location of Murray White's fatal injury. In Loffland, Roberts, an injured employee of a casing company, brought suit against Loffland Bros., the drilling contractor, for damages, and Loffland Bros. filed a third-party claim for indemnity against O. D. Casing Crews, Inc., Roberts' employer. The district court dismissed the third-party complaint and we affirmed without referring to the exclusive liability provision of L & H. We found, instead, that the third-party claim for tort indemnity could not stand because there was no evidence in the record of any negligence on the part of the casing company other than the negligence of the injured employee. Under the doctrine of Drewery v. Daspit Bros. Marine Divers, Inc., 5 Cir. 1963, 317 F.2d 425, we declined to impute the employee's negligence, which resulted only in injuries to the employee himself, to his employer. There was, therefore, no underlying tort liability upon which Loffland Bros. could base its claim for indemnity
 We do not read this court's reliance on a pre-existing common law rule rather than on the exclusive liability provision of L & H, never mentioned in the opinion, as an implicit retreat from the holding in ODECO. Indeed the theory of indemnity in both ODECO and Loffland Bros. is the same: absent some underlying tort liability of the employer, there can be no third-party claim for tort indemnity against the employer. That the court in Loffland Bros. elected to apply this theory under common-law principles rather than under the exclusive liability provision of the L & H is of little significance in assessing ODECO's continuing potency as precedent.