**Mrs. Linda Harper HOLDEN, Individually and as Natural Tutrix of The Estates of her minor children, Melvin Scott Holden, Sandra Kay Holden and Blake Alan Holden et al., Plaintiffs,**

v.

**PLACID OIL COMPANY et al., Defendants.**

**Civ. A. Nos. 75–3236, 75–3333, 76–2442 and 76–2799.**

United States District Court, E. D. Louisiana.

July 3, 1979.

Haydn S. Berey, Livingston, La., Adams & Reese, Thomas J. Wyllie, New Orleans, La., for National Union Fire Ins. of Pittsburgh, Pa., intervenor.

Martzell & Montero, New Orleans, La., Seale, Sledge & Ross, Hammond, La., for plaintiffs.

Paul H. Dué, Baton Rouge, La., for Nat. Union Fire Ins. of Pittsburgh, Pa., intervenor; and for plaintiff Mrs. Linda Harper Holden.

John W. deGravelles, Baton Rouge, La., for plaintiff Mrs. Linda Harper Holden.

Charles W. Dittmer, Jr., New Orleans, La., for plaintiff Mrs. Robert Jackson.

Stephen C. Sledge, Hammond, La., for plaintiff Mildred M. Turnbull.

Maurice C. Hebert, Jr., Dean A. Sutherland, Hebert, Abbott & Horack, New Orleans, La., and Armand A. Gutierrez, Dallas, Tex., for defendants Placid Oil Co. and Hartford Acc. & Indem. Co.

Donald L. King, New Orleans, La., Voorhies & Labbe, Lafayette, La., for defendant Michigan-Wisconsin Pipe Line Co.

H. Lee Leonard, James Lambert, Lafayette, La., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendants Michigan-Wisconsin Pipe Line and Harbor Ins. Co.

Patrick T. Caffery, Caffery, Duhe, Oubre & Gibbens, John M. Duhe, Jr., John Blackwell, New Iberia, La., for defendant Gulf Coast and Supply Co.

Charles E. Leche, Normann & Normann, New Orleans, La., for third party T. K. Valve & Mfg., Inc. and Hartford Acc. & Indem. Co.

CASSIBRY, District Judge:

Since 1953, one of the foremost commentators on workmen's compensation has maintained that "[p]erhaps the most evenly-balanced controversy in all of compensation law is the question whether a third party in an action by the employee can get contribution or indemnity from the employer, when the employer's negligence has caused or contributed to the injury." Larson, Workmen's Compensation Law § 76.10, at 14–287 (1974). The instant case presents an intriguing and important variation of this controversy—that in which the theory of indemnity is based not on the negligence of the employer, but rather on its position as the manufacturer of an allegedly defective product that injured its employee.

In September 1975, an accident occurred on a stationary platform owned by Placid Oil Co. (Placid), located on the Outer Continental Shelf. The accident involved an explosion in a pipeline owned by Michigan-

Wisconsin Pipeline Co. (Michigan-Wisconsin). It is claimed that a certain valve in the pipeline exploded, which valve was manufactured by T. K. Valve Co. (T. K. Valve) from steel that was supplied by Republic Steel Corp. (Republic) and forged in the rough by Gulf Coast Marine and Supply Co. (Gulf Coast).

Three people were killed by the explosion. Two of them, Turnbull and Holden, were employees of T. K. Valve who were performing repairs on the valve in question. The third, Jackson, was an employee of Placid.

Suits were filed by the survivors of Turnbull, Holden, and Jackson. The instant motion concerns only the Turnbull and Holden cases. In those actions, Placid, Michigan-Wisconsin, Republic, and Gulf Coast are all either defendants or third-party defendants. In these capacities, they have brought cross-claims or third-party claims for indemnity against T. K. Valve. T. K. Valve was not sued by the plaintiffs in the Turnbull and Holden cases because it was the employer of the decedents and had paid compensation under the Longshoremen and Harbor Workers Compensation Act, 33 U.S.C. § 901 *et seq.* (LHWCA), which applies to this case pursuant to the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq.*

By the instant motion, T. K. Valve seeks summary judgment on all indemnity claims asserted against it in the Turnbull and Holden cases. It contends: (1) there was no express indemnity agreement; (2) no warranty of workmanlike performance can be implied to support the indemnity claims here; (3) no other obligation to indemnify can be implied here; and (4) the LHWCA does not allow indemnity based on a tort theory against an employer who has paid compensation.

█ The first and second points are easily resolved in favor of T. K. Valve. It is uncontroverted that no written agreement exists in this case upon which to base the indemnity claims. Further, the case law is clear that no warranty of workmanlike performance will be implied when work is performed (and an injury suffered) on a stationary platform. *ODECO v. Berry Bros. Oilfield Service*, 377 F.2d 511, 513 (5th Cir. 1967); *Law v. Sea Drilling Co.*, 510 F.2d 242, 252 (5th Cir. 1975). No state law theory can be advanced to change this result. *ODECO v. Berry Bros. Oilfield Service*, *supra*, at n. 4.

The other points in T. K. Valve's argument present a serious legal problem at the heart of which lies the exclusivity provision of the LHWCA:

§ 905.

(a) The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty *on account of such injury or death*. . . .

(b) In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. . . .

33 U.S.C. § 905 (emphasis added).

Since no party seeking indemnity here is a vessel owner, the explicit Congressional instructions provided in subsection (b) are not applicable, and this case must be resolved under the more general language of subsection (a).

A. *The nature of the indemnity that may be sought under § 905(a)*

1. *Contract*

The Fifth Circuit has plainly stated that "the employer may continue, even in spite of the exclusive liability provision of the Act, to remain liable for indemnity on the

basis of an express or implied contractual obligation." *ODECO v. Berry Bros. Oilfield Service, supra,* 377 F.2d at 514–515. Section 905(a) of the Act does not bar such recovery because a claim for indemnity based upon such an obligation is not, in the words of that section, "on account of" the employee's injury or death. Rather, it is grounded upon an independent obligation that exists directly between the indemnitor and the indemnitee. *See* Larson, Workmen's Compensation Law § 76.30 (1974).

This was the concept relied upon by the Supreme Court when it allowed indemnity to a shipowner based upon the stevedore's breach of its implied warranty of workmanlike performance in *Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp.,* 350 U.S. 126, 129–30, 76 S.Ct. 232, 235, 100 L.Ed. 133 (1956). Although the 1972 Amendments to the LHWCA specifically bar recovery of *Ryan* indemnity, the Court's approach to the exclusivity provision of the LHWCA is still instructive. In *General Electric Co. v. Cuban American Nickel Co.,* 396 F.2d 89 (5th Cir. 1968), Judge Wisdom followed this approach and traced its origin to the New York case of *Westchester Lighting Co. v. Westchester County Small Estates Corp.,* 278 N.Y. 175, 15 N.E.2d 567. Judge Wisdom quoted the New York judge's succinct statement of the concept: "Plaintiff does not sue for damages 'on account of' Haviland's death. Plaintiff asserts its own right of recovery for breach of an alleged independent duty or obligation owed to it by the defendant." 396 F.2d at 91, *quoting* 15 N.E.2d at 568.

### 2. *Tort*

When one considers the possibility of indemnity on a tort basis, the language of some cases seems to indicate that § 905(a) is an absolute bar. *ODECO v. Berry Bros. Oilfield Services, supra; Aetna Casualty & Surety Co. v. Service Contracting, Inc.,* 490 F.2d 299 (5th Cir. 1973). Close examination of the facts of those cases, however, reveals that the only kind of tort indemnity sought was that which rests on the traditional theory of passive-active or secondary-primary

negligence. This theory is based on the idea that the indemnitor breached a duty of care it owed *to the injured person* —and did so in such a manner as to make indemnity appropriate. Recovery of indemnity on this basis is contrary to § 905(b), for such recovery is clearly "on account of" the employee's injury.

It is important to analyze very closely the exact nature of the tort theory of indemnity presented. For example, in *White v. Texas Eastern Transmission Corp.,* 512 F.2d 486 (5th Cir. 1975), a "launch package" exploded, injuring plaintiff White. White's employer, Wheatley, had assembled the package and sold it to defendant Texas Eastern Transmission. Defendant Bettis had manufactured the "actuator valve" incorporated into the package. Bettis sought indemnity from Wheatley. In affirming the district court's dismissal of the indemnity claim, the Fifth Circuit was careful to examine the nature of the duty that the alleged indemnitee claimed was breached. It said:

> . . . it is clear from a reading of *ODECO [v. Berry Bros. Oilfield Services, supra]* and other cases that there must be some underlying tort liability predicated on a breach of the employer's duty in order for a right of indemnity to arise in a third party. Here, the only breach of duty—and the only resulting theoretical liability—of Wheatley that could be asserted was a *duty owed to its employee* to assemble the launch package in a nonnegligent manner so as to prevent injury to the employee. It is clear beyond doubt under ODECO that § 905 of L & H has extinguished *this* liability in favor of a compensation scheme. Thus there remains no underlying tort liability to support Bettis' indemnity claim.

512 F.2d at 489 (footnote omitted) (emphasis added).

■ This language suggests, and I hold here, that if a claim of indemnity founded in tort is premised on an alleged *duty owed by the indemnitor directly to the indemnitee,* such a claim is not barred by § 905(a). As is the case with claims of indemnity

founded in contract, then, where a duty or obligation sounding in tort exists directly between the indemnitor and indemnitee, recovery of indemnity based on this duty or obligation is not "on account of" the employee's injury, and hence is not proscribed by § 905(a).

Indeed, in other areas of workmen's compensation law, indemnity founded on some theory other than contract has been allowed where there existed a direct duty of the indemnitor to the indemnitee, despite exclusivity clauses similar to § 905(a). One example is the bailor-bailee situation. *See* Larson, Workmen's Compensation Law § 76.42 (1974).

B. *The nature of the indemnity claims advanced here*

As is proper in Outer Continental Shelf Lands Act cases, the claims for indemnity in the instant case are all founded upon state law. They are labelled variously as claims in "strict liability," "products liability," or "warranty." Despite the Court's urging, few of the cross-claimants or third-party plaintiffs have specified the precise legal authority for their claims. However, it is clear that all these claims are founded upon T. K. Valve's position as the manufacturer of the valve that, it is alleged, exploded and caused the deaths of plaintiffs' decedents.

In the instant motion, T. K. Valve has mounted a broad attack against the indemnity claims. Insofar as the claims sound in tort, mover contends that § 905(a) of the LHWCA bars them absolutely. Insofar as they sound in contract, mover contends that "indemnity cannot be recovered on implied warranty or contractual grounds in Louisiana." T. K. Valve's motion rests entirely upon these broad legal propositions. Its statement of material facts establishes only that the decedents Turnbull and Holden were employees of T. K. Valve; that they were injured while doing work for their employer on a platform on the Outer Continental Shelf; that compensation was paid by T. K. Valve pursuant to the LHWCA; and that no written indemnity agreement existed between T. K. Valve and any other party to these lawsuits. Since, for the reasons set out below, I cannot subscribe to the broad legal propositions urged by T. K. Valve, its motion is denied.

1. *Contract*

None of the cases cited by mover stand for the proposition that implied contractual indemnity is flatly forbidden in Louisiana. Most of the cases[1] simply set out the Louisiana rule that written indemnity agreements will be strictly construed, especially with regard to indemnity against the indemnitee's own fault. The strongest case in mover's favor is *General Electric Co. v. Cuban American Nickel Co., supra*, which emphasized Louisiana's strictness concerning indemnity as it refused, on the facts before it, to imply an obligation to indemnify. However, in several cases Louisiana courts have, relying in large part upon LSA–C.C. Art. 1930, imposed upon the contractual relationship between two commercial parties an unwritten obligation that, if one party's breach of contract[2] causes the other to be liable for the payment of damages, the one in breach shall pay indemnity. *Hunter v. Mayfield*, 106 So.2d 330 (La.App. 2d Cir. 1958). Moreover, LSA–C.C. Art. 2531 specifically provides for a right of indemnity against a manufacturer regardless of the writings between the parties. Thus it cannot be said that Louisiana law forbids an award of indemnity in the absence of an express indemnity agreement.

The facts of the instant cases are not now sufficiently settled, nor has the law been sufficiently analyzed, for me to determine whether indemnity under these or any other

---

1. *Arnold v. Stupp Corp.*, 205 So.2d 797 (La. App. 1st Cir. 1968); *Jennings v. Ralston Purina Co.*, 201 So.2d 168 (La.App. 2d Cir. 1967); *Gorsalitz v. Olin Mathieson Chemical Corp.*, 429 F.2d 1033 (5th Cir. 1970); *Dickerson v. Continental Oil Co.*, 449 F.2d 1209 (5th Cir. 1971);

*Day v. ODECO*, 353 F.Supp. 1350 (E.D.La. 1973).

2. Each alleged indemnity here claims a breach of contract or warranty on the part of T. K. Valve.

specific implied contractual indemnity theories is available. Thus, although I deny this part of T. K. Valve's motion because of the failure of its broad legal proposition, I express no view on the merits of any particular theory as it may apply to any particular alleged indemnitee.

### 2. Tort

■ T. K. Valve has argued that § 905(a) of the LHWCA bars any recovery of indemnity sounding in tort, but I have concluded that tort indemnity is permissible if founded upon a breach of a duty owing directly between the indemnitor and the indemnitee. Accordingly, this part of T. K. Valve's motion for summary judgment must also be denied.

Like that of most states, Louisiana law concerning the duties of manufacturers is developing rapidly.[3] It may be that, under some circumstances, Louisiana allows recovery of indemnity based in tort against the manufacturer of a defective product. See Trahan v. Highlands Ins. Co., 343 So.2d 1163 (La.App. 3d Cir. 1977), in which indemnity from a manufacturer was denied solely because no defect in the product was shown to have caused the accident. In any event, the instant cases have not been sufficiently developed, legally or factually, for me to be able to conclude as a matter of summary judgment whether T. K. Valve owed to any particular alleged indemnitee a duty that would, under Louisiana law, support a tort claim for indemnity.

---

**3.** See generally Weber v. Fidelity & Casualty Ins. Co. of N. Y., 250 So.2d 754 (La.1971); Robertson, Manufacturers' Liability for Defective Products in Louisiana Law, 50 Tul.L.Rev. 50 (1975).